1  Linda L. Usoz (SBN 133749)
   linda.usoz@klgates.com
2  **K&L GATES LLP**
   630 Hansen Way
3  Palo Alto, CA 94304
   Telephone: (650) 798-6700
4  Facsimile: (650) 798-6701

5  Attorneys for Defendant RECKITT BENCKISER
   PHARMACEUTICALS, INC.
6

ORIGINAL
FILED

JUL 12 2013

RIC    RD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

7

8                **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10                    **OAKLAND DIVISION**

11                              **C13-3245** **LB**

12  JANELLE CRONK,                    Case No.

13              Plaintiff,            **NOTICE OF REMOVAL**  **ADR**

14      vs.                          (Alameda County Superior Court
                                     Case No. RG 13683734)
15  RECKITT BENCKISER PHARMACEUTICALS,
    INC.; and DOES 1-10, inclusive,
16
17              Defendants.
18

19  **TO:    UNITED STATES DISTRICT COURT**
           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
20

21      PLEASE TAKE NOTICE THAT Defendant Reckitt Benckiser Pharmaceuticals, Inc.

22  (hereinafter "RB Pharma"), by and through its attorneys, K&L Gates LLP, pursuant to 28 U.S.C. §§

23  1331, 1332, 1441 and 1446, hereby removes the above-captioned matter from the Superior Court of

24  California, Alameda County, to the United States District Court for the Northern District of

25  California, and respectfully states as follows:

26  **PROCEDURAL BACKGROUND**

27      1.      On or about June 14, 2013, plaintiff Janelle Cronk (hereinafter "Plaintiff") filed a

28  Complaint against RB Pharma in the Superior Court of the State of California, County of Alameda, in

                              1

COPY

1   the matter entitled Janelle Cronk v. Reckitt Benckiser Pharmaceuticals, Inc., Case No. RG13683734

2   ("the State Court Action").  A copy of the Complaint is attached hereto as **Exhibit A**.

3        2.    RB Pharma has not entered its appearance, filed responsive pleadings, or otherwise

4   responded to Plaintiff's Complaint in the State Court Action.

5        3.    This Notice of Removal is filed in the District Court of the United States for the

6   district in which the State Court Action is pending.

7        4.    RB Pharma was served with a copy of the Summons and Complaint in this matter on

8   or about June 17, 2013.  A copy of the Summons received by RB Pharma is attached hereto as

9   **Exhibit B**.

10        5.    On June 24, 2013, the Superior Court entered a Notice of Case Management

11   Conference and Order, a copy of which is attached hereto as **Exhibit C**.

12        6.    Pursuant to 28 U.S.C. § 1446(a), the aforesaid Summons, Complaint and Notice of

13   Case Management Conference and Order represent all the process, pleadings, and orders seen by any

14   defendant in the State Court Action, and no hearing or other proceedings have taken place in the State

15   Court Action to RB Pharma's knowledge.

16   **GROUNDS FOR REMOVAL**

17        7.    This Notice of Removal is being timely filed within 30 days of first receipt of a copy

18   of the Complaint by RB Pharma pursuant to 28 U.S.C. § 1446(b).  Removal is proper based on

19   federal question jurisdiction under 28 U.S.C. § 1331, and based on diversity jurisdiction under

20   28 U.S.C. § 1332.

21   Federal Question Jurisdiction (28 U.S.C. § 1331)

22        8.    The United States District Court for the Northern District of California is the federal

23   court for Alameda County, California.  28 U.S.C. § 84(a).

24        9.    In her Complaint, Plaintiff alleges that RB Pharma retaliated against her in violation of

25   the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, for exercising her alleged FMLA rights

26   and allegedly opposing practices she believed are forbidden by the FMLA..  See Exhibit A, Third and

27   Fourth Causes of Action, ¶¶ 44-53.

28

10.     Therefore, this is a civil action in which plaintiff asserts a claim under a federal statute of which the United States District Courts have original jurisdiction, pursuant to 28 U.S.C. §1331. Furthermore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.  Accordingly, this entire action may be removed to this Court pursuant to 28 U.S.C. §1441.

Diversity Jurisdiction (28 U.S.C. § 1332)

11.     Plaintiff is a resident of the State of California.  See Exhibit A, ¶ 1.

12.     Pursuant to 28 U.S.C. § 1332, a corporation shall be deemed to be a citizen of the State in which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332 (c)(1).

13.     RB Pharma is a corporation incorporated in the State of Delaware.  See Declaration of Julie Riles ¶ 2 & Exhibit A thereto (RB Pharma's Certificate of Incorporation in the State of Delaware).

14.     RB Pharma's principal place of business is in Richmond, Virginia.  See Declaration of Julie Riles ¶ 3.

15.     Accordingly, RB Pharma is deemed a citizen of the states of Delaware and Virginia.

16.     Although the Complaint does not set forth the specific amount that Plaintiff seeks to recover in this action, Plaintiff states in her Complaint that she seeks economic damages, damages for pain and suffering and emotional distress, injunctive relief, statutory attorneys' fees, statutory liquidated damages, unpaid wages, and exemplary damages. See Exhibit A, pgs. 14-16.  Based on the characterization of the alleged damages, the amount of the damages sought for the claims asserted in the Complaint exceeds the sum or value of $75,000, exclusive of interest and costs.

17.     Accordingly, this entire action may be removed to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, is between citizens of different States and RB Pharma is not a citizen of the State of California, the State in which this action was brought.

18.     In filing this Notice of Removal, RB Pharma does not waive any defenses that may be available to it.

1      19.     Upon the filing of this Notice of Removal, RB Pharma shall promptly give written

2 notice of this removal to Plaintiff's attorney and shall file a copy of this Notice with the Clerk of the

3 Superior Court of the State of California, County of Alameda, pursuant to 28 U.S.C. § 1446(d).

4      **WHEREFORE**, RB Pharma respectfully requests that this court assume jurisdiction over this

5 matter upon removal.

6

7                         **K& L GATES LLP**

8

9 Dated:  July 12, 2013           By: _____

10                              Linda L. Usoz

11                           Attorneys for Defendant
                          Reckitt Benckiser Pharmaceuticals, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   Aaron P. Minnis, Esq. (SBN202935)
    Sonya L. Smallets, Esq. (SBN226190)
2   Sean D. McHenry, Esq. (SBN284175)
    MINNIS & SMALLETS LLP
3   315 Noe Street
    San Francisco, California 94114
4   T: (415) 551-0885
    F: (415) 683-7157
.5  E: aaron@minnisandsmallets.com

6   Attorneys for Plaintiff
    JANELLE CRONK

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF ALAMEDA—UNLIMITED JURISDICTION

10

11  JANELLE CRONK,                          )  Case No.:  RG13683734
                                            )
12                                          )
13                                          )  COMPLAINT FOR DAMAGES
             Plaintiff,                      )
14                                          )
                                            )  (1) Retaliation for Exercising CFRA
15  vs.                                     )  Rights
                                            )  (2) Retaliation for Opposing CFRA
16                                          )  Violation
                                            )  (3) Retaliation for Exercising FMLA
17                                          )  Rights
    RECKITT BENCKISER                       )  (4) Retaliation for Opposing FMLA
18  PHARMACEUTICALS, INC.; & DOES          )  Violation
                                            )  (5) Discrimination in Violation of
19  1 THROUGH 10, INCLUSIVE,               )  FEHA/PDLL
                                            )  (6) Retaliation in Violation of
20                                          )  FEHA/PDLL
                                            )  (7) Constructive Termination in
21                                          )  Violation of Public Policy
                                            )  (8) Nonpayment of Wages
22           Defendants.                     )  (9) Failure to Prevent Discrimination
                                            )  & Retaliation in Violation of FEHA
23                                          )
                                            )
24                                          )  Jury Trial Demanded
                                            )
25                                          )           BY FAX

26

27       COMES NOW Plaintiff JANELLE CRONK for causes of action, and

28  alleges as follows:

---

COMPLAINT FOR DAMAGES

## I. ALLEGATIONS

1.    Plaintiff JANELLE CRONK at all relevant times was an employee of the defendant and resides in Contra Costa County.

2.    Defendant RECKITT BENCKISER PHARMACEUTICALS, INC. ("Reckitt" or "the company"), on information and belief, is a pharmaceutical company and subsidiary of Reckitt Benckiser PLC, a health, hygiene and home products company with operations in 60 countries and brands such as Air Wick, Calgon, Woolite, Spray N Wash, Clearasil, Scholl and Lysol. On information and belief, Reckitt has several hundred employees working in the United States, including in California, where plaintiff worked in Alameda County. At all relevant times, defendant was plaintiff's employer.

3.    The true names and capacities, whether individual, corporate or otherwise, of DOES 1 through 10 are at this time unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will ask leave to amend this complaint to reflect their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said defendants is responsible, jointly and severally, for the events and injuries described herein and caused damages thereby as alleged herein.

4.    .Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein each and every co-defendant was and is the predecessor-in-interest, successor-in-interest, agent, counselor, employee, servant, partner, franchisee and/or joint venturer of each of other co-defendant, and in doing the actions hereinafter mentioned, was and/or is acting within the scope of its authority within such agency, employment, counseling, service, partnership, franchise and/or joint venture or single enterprise, and with the permission and consent of each co-defendant. Plaintiff alleges that each of said defendants is responsible, jointly and

1 | severally, for the events and injuries described herein and caused damages
2 | thereby to plaintiff as alleged herein.
3 |     5.    In August 2006, Reckitt hired Cronk to work as a Clinical
4 | Liaison. Prior to joining Reckitt, Cronk worked as a Pharmaceuticals Sales
5 | Representative at Innovex, where she earned a sales achievement award;
6 | at Alcon Laboratories, where she successfully increased market share by
7 | 10% in her territory; and at Ross Pediatrics, where she was acknowledged
8 | for excellence in her overall performance.
9 |     6.    At Reckitt, plaintiff was responsible for marketing Suboxone,
10 | one of the top-200 drugs by total U.S. sales in 2010 and 2011. Suboxone is
11 | used for the long-term treatment of opioid dependence and can be
12 | prescribed only by certified physicians to treat opiate-addicted patients.
13 |     7.    At Reckitt, Cronk covered a territory which geographically
14 | encompassed from Los Altos to Richmond, California. Her daily drive ranged
15 | between 75-180 miles. She was expected to visit at least seven doctors
16 | daily, plus make three pharmacy calls.
17 |     8.    At all times, Cronk's performance met or exceeded
18 | expectations. In 2008, according to Cronk's annual performance evaluation,
19 | she was rated "strong" or "very strong" in every core value. She earned the
20 | same ratings in 2009, when her manager noted, "Janelle is very committed
21 | to her providers, the patients in her territory and to continuing to provide
22 | Quality Patient Care to those in need."
23 |     9.    In 2010, Cronk continued her "strong" performance, as
24 | acknowledged by her manager, who wrote, "Janelle is a very enthusiastic
25 | member of the Nor Cal Team. She is committed to Territory and District and
26 | has a strong sense of entrepreneurialship when it comes to managing her
27 | territory. She sees it[,] [o]wns it and makes it happen with company
28 | initiatives."

-3-

1     10.   In June 2011, Cronk learned she was pregnant with her first

2 child. She informed her direct manager, Kelly Corbett, and Corbett's

3 manager, Pat Lewis. She also emailed Eve Campan, Human Resources

4 manager in Virginia, to inquire about benefits. Campan suggested that

5 Cronk discuss her maternity leave with Corbett.

6     11.   Early in the pregnancy, Cronk experienced medical issues that

7 were serious enough to report to her obstetrician. Cronk experienced

8 recurring symptoms that were affecting her ability to work. Her obstetrician

9 instructed her not to drive or sit for extended periods, and not to take plane

10 lasting more than two hours. Cronk notified the company of these

11 restrictions.

12     12.   By September 27, 2011, Cronk's health issues had worsened,

13 prompting Cronk's doctor to advise a two-week leave of absence. Cronk

14 immediately notified her manager and, in compliance with HR's directive,

15 began working with Reckitt's third party benefits administrator, Aetna.

16 Cronk's leave ultimately was extended to the birth of her daughter. At all

17 times, Cronk was diligent in notifying the company of her status and

18 completing the necessary paperwork during each phase of her leave of

19 absence.

20     13.   On May 21, 2012, Cronk reported back to work following the

21 birth of her daughter. Pat Lewis had recently left the company and Corbett,

22 who was Cronk's direct manager, had given notice of her intent to resign.

23 Shortly thereafter, Corbett informed Cronk that she was being placed on a

24 PIP because the company supposedly determined that Cronk's performance

25 was not meeting expectations while she was on protected leave. Corbett

26 indicated that Lewis had directed the PIP with Campan's authorization.

27 However, Corbett indicated that she did not agree with this action and had

28 declined to be a part of it. According to Corbett, a newly hired second level

-4-

COMPLAINT FOR DAMAGES

1   manager, Mark Charles, whom Cronk had never met, would be traveling to
2   California in the next few weeks to present the PIP to Cronk.

3        14.   On June 18, 2012, Charles met with Cronk to review the PIP.
4   The PIP stated, in part, that, "This is to inform you that your performance in
5   your position as Clinical Liaison is not meeting expectations. To date there
6   continue to be critical areas of your sales performance that are not meeting
7   the expected standards. Sales performance, specifically, Suboxone Film
8   market share penetration and Monotherapy penetration are below
9   expectations." Notably, the date of the report used to establish the Oakland
10  Territory Suboxone Film market share penetration for which Cronk was
11  supposedly being evaluated was May 18, 2012—before Cronk returned to
12  work from protected leave.

13       15.   The PIP also stated, "You are required to increase Suboxone
14  Film Market Share penetration to a minimum of Pac West Area performance
15  [46.13%] by September 15, 2012." In other words, Cronk was expected to
16  achieve nearly 20% growth in three months; otherwise, "Failure to make
17  immediate and sustained improvements in performance as outlined above
18  may result in further disciplinary action up to and including termination."

19       16.   At her meeting with Charles, Cronk questioned the PIP's
20  legitimacy, given that she had just returned from an extended protected
21  leave of absence. She pointed out that she had been on protected leave for
22  the past seven months, during which time her region had not been attended
23  to, and that it was unfair for the company to expect her to grow—by 20% in
24  just three months—a region that had been dormant. Cronk reminded
25  Charles that about two months before her leave, her region was expanded
26  to include part of a territory of a departing employee. That area historically
27  underperformed, which distorted Cronk's numbers. Cronk had had little
28  time before her leave of absence to cultivate the new relationships

-5-

COMPLAINT FOR DAMAGES

1    necessary to improve the numbers in the expanded territory, yet this was
2    an area Charles pounced upon after she returned from leave.

3        17.    Charles dismissed her concerns and claimed that "everyone"
4    who had received an "adequate" performance rating in December 2011 had
5    been put on a PIP. Cronk explained that in December 2011, she was already
6    more than three months into her leave of absence, and that she had never
7    even received a copy of the 2011 evaluation. Charles said that the PIP
8    would stand, and referred to another employee who was placed on a PIP as
9    soon as that employee had returned from an approved medical leave to
10   justify his decision. He also told her, "Well, I haven't terminated you, yet."
11   Cronk acknowledged receiving the PIP, but wrote, "I do not agree."

12       18.    After the meeting, Cronk set to work on meeting the PIP's
13   unrealistic objectives. By July 30, she was acknowledged as a Film volume
14   increase leader.

15       19.    In August 2012, Cronk was informed that Jonathan Lewis, who
16   was based in Seattle, would be her new direct manager. She asked Lewis
17   about the PIP, but he claimed he was not involved and that it was being
18   handled by Charles. On September 6, having not heard from Charles, Cronk
19   contacted Lewis again, requesting a status update regarding her complaint
20   about the PIP. Lewis admitted the PIP was unfair, as Cronk had just
21   returned from maternity leave, but indicated it could be extended for three
22   months. He also questioned whether she was committed to her territory,
23   which no manager had done prior to her taking maternity leave.

24       20.    Cronk requested time to meet with Lewis and Charles because
25   she believed the PIP was discriminatory and that it should not have been
26   issued in the first place. She wrote on September 12 that, "I think some of
27   the management has treated me differently ever since they learned that I
28   was attempting to get pregnant and certainly after I returned from

-6-

1  pregnancy leave. From my point of view I think the PIP should be closed
2  and removed from my record. I do not agree with it in the first place, and
3  frankly think that I was placed on a PIP to punish me for taking pregnancy
4  leave..."

5      21.  On September 14, Cronk talked with Charles and Lewis. They
6  addressed none of Cronk's concerns, other than to state that HR was aware
7  and involved in the situation. Charles claimed it was "common practice" to
8  place employees with an "adequate" rating on a PIP. However, by this time,
9  Cronk still had not been provided with a copy of her 2011 evaluation by
10 anyone, including Charles. Regardless, Charles said that the PIP would be
11 extended for two alleged reasons: first, "based on updated analytical
12 information" showing her target had been set too high; and second,
13 because of "leadership changes." He asked if she would accept the
14 extension. Cronk requested time to consider, and Charles immediately
15 asked if she wanted to resign. Cronk repeated that she needed time to
16 consider.

17     22.  After this meeting, Reckitt provided Cronk with the 2011
18 performance evaluation, for the period covering January 1 to December 31,
19 2011. The rating is "adequate", which is negative. Some or all of the
20 evaluation was prepared while Cronk was on maternity leave. Her former
21 manager Corbett's comments are positive, and expressly acknowledge that
22 "Janelle is currently on LOA"; however, Pat Lewis' comments were decidedly
23 negative. Lewis wrote, "Janelle's performance with the film is disappointing,
24 her market share remains in the low 24% share as of 10/7 weekly
25 prescriber", and "Janelle will need to quickly address the market share
26 shortfalls of her territory." Lewis' criticism is based on data taken while
27 Cronk was on a protected leave of absence.

28

-7-

COMPLAINT FOR DAMAGES

23.   The evaluation makes no mention of Cronk's ongoing medical issues *prior* to the disability leave, such as Cronk's inability to drive or sit for long periods, even though her manager and Lewis were aware that these issues affected Cronk's ability to work.

24.   Moreover, the evaluation is based on inaccurate information in that there were known data discrepancies associated with the company's transition to using data provided by Wolters Kluwer, a company that tracks and reports sales data. The Kluwer data did not including sales information for several pharmacies in Cronk's territory. Corbett had notified Lewis and HR of this situation prior to Cronk going on maternity leave in response to criticisms Lewis had raised about Cronk's performance. The company accepted this explanation and Croink was not subjected to any disciplinary action based on her sales numbers. However, after Cronk returned from protected leave, the company relied on data that was known to be false to place Cronk on the PIP, even though these issues remained unresolved and Cronk's territory had been dormant for months.

25.   On September 16, Cronk again complained to Charles that her concerns about the first PIP had gone unacknowledged and unanswered for three months before the company issued the second PIP. Moreover, like the first PIP, the second PIP had the same inaccuracies as the evaluation. Cronk complained to Charles that extending the PIP did not alleviate her concern that the initial PIP was retaliatory and discriminatory, and should not have been issued in the first place.

26.   Cronk's health worsened as a result of this situation and HR's failure to take action to resolve it. Cronk began suffering from panic attacks, insomnia, weight loss, rashes, and painful psoriatic skin outbreaks for which she had to take medication. She could not breast feed and felt depressed to the point where her family and doctor became deeply

-8-

1  concerned about her health and well being. She sought therapy and was
2  prescribed medication. The effect on her health was such that her health
3  care provider advised her to leave her job. Cronk thought of requesting a
4  leave of absence instead, but she had been advised by Aetna (the
5  company's benefits provider) that she had supposedly "exhausted" her
6  leave.

7      27.   On September 16, Cronk notified HR that she was forced to
8  resign. She explained, "Being put on a PIP is a traumatic event, given that I
9  have been in very good standing with the company for 6 years. Having my
10  job security threatened, after I went to great lengths to understand and
11  comply with the California Leave Laws to ensure I would have job-
12  protection upon my return was devastating. The anxiety this caused me,
13  especially returning from a pregnancy leave that included a long and
14  complicated period of disability, was painful and overwhelming ... This
15  unjust and unfair situation has had a significant impact on my health and
16  wellbeing and has had a devastating impact on my life and livelihood. Given
17  that the company has made clear that they will not remove the undeserved
18  PIP I see no possible way that I can move forward and succeed."

19      28.   Cronk's last day of employment was September 28, 2012.
20  Thereafter HR contacted Cronk to discuss her COBRA rights. HR Director
21  Julie Riles indicated she did not view the situation in the same way as
22  Cronk, referring to the circumstances of her constructive termination.

23      29.   Plaintiff timely filed administrative charges with DFEH and
24  obtained her right to sue.

25      30.   Defendant's actions were undertaken for improper purposes as
26  alleged above and were willful, oppressive and in conscious disregard of
27  plaintiff's rights, and were designed and intended to cause and did, in fact,
28  cause plaintiff to suffer severe emotional distress, pain and suffering, and

1  substantial economic damage and, therefore, justify the awarding of
2  exemplary and punitive damages.

3      31.    The above allegations are incorporated by reference in each and
4  every cause of action stated below.

5                              **II. CAUSES OF ACTION**

6                              <u>**FIRST CAUSE OF ACTION**</u>

7                    **(Retaliation for Exercising CFRA Rights)**

8      32.    Plaintiff was eligible for CFRA leave.

9      33.    Plaintiff took leave for the birth of her child.

10     34.    Defendant threatened plaintiff with termination. It placed
11  plaintiff on an unwarranted and discriminatory performance improvement
12  plan and extended the plan, and defendant gave plaintiff an unwarranted
13  and discriminatory performance evaluation. These and other actions
14  described above were designed to force, and did force, plaintiff to resign.

15     35.    Plaintiff's request for and taking of leave was a motivating
16  reason for defendant's adverse actions.

17     36.    Plaintiff was harmed.

18     37.    Defendant's retaliatory conduct was a substantial factor in
19  causing plaintiff's harm.

20                              <u>**SECOND CAUSE OF ACTION**</u>

21                    **(Retaliation for Opposing CFRA Violation)**

22     38.    Plaintiff was eligible for CFRA leave.

23     39.    Following her return from leave, plaintiff opposed practices she
24  reasonably believes are forbidden under the Act.

-10-

1      40.   Defendant threatened plaintiff with termination. It placed
2   plaintiff on an unwarranted and discriminatory performance improvement
3   plan and extended the plan, and defendant gave plaintiff an unwarranted
4   and discriminatory performance evaluation. These and other actions
5   described above were designed to force, and did force, plaintiff to resign.

6      41.   Plaintiff's protected activity was a motivating reason for
7   defendant's adverse actions.

8      42.   Plaintiff was harmed.

9      43.   Defendant's retaliatory conduct was a substantial factor in
10   causing plaintiff's harm.

11                    **THIRD CAUSE OF ACTION**

12              **(Retaliation for Exercising FMLA Rights)**

13      44.   Plaintiff was eligible for leave under the FMLA.

14      45.   Plaintiff requested and took protected FMLA leave for her own
15   serious medical condition.

16      46.   Defendant threatened plaintiff with termination. It placed
17   plaintiff on an unwarranted and discriminatory performance improvement
18   plan and extended the plan, and defendant gave plaintiff an unwarranted
19   and discriminatory performance evaluation. These and other actions
20   described above were designed to force, and did force, plaintiff to resign.

21      47.   Plaintiff's request for and taking of FMLA leave was a motivating
22   reason for these adverse actions.

23      48.   Plaintiff was harmed.

24                   **FOURTH CAUSE OF ACTION**

25              **(Retaliation for Opposing FMLA Violation)**

26      49.   Plaintiff was eligible for leave under the FMLA.

27      50.   Following her return from leave, plaintiff opposed practices she
28   reasonably believes are forbidden under the Act.

-11-

COMPLAINT FOR DAMAGES

1      51.   Defendant threatened plaintiff with termination. It placed

2   plaintiff on an unwarranted and discriminatory performance improvement

3   plan and extended the plan, and defendant gave plaintiff an unwarranted

4   and discriminatory performance evaluation. These and other actions

5   described above were designed to force, and did force, plaintiff to resign.

6      52.   Plaintiff's protected activity was a motivating reason for these

7   adverse actions.

8      53.   Plaintiff was harmed.

9   **FIFTH CAUSE OF ACTION**

10  **(Pregnancy Disability Discrimination in Violation of Fair Employment**

11  **and Housing Act / Pregnancy Disability Leave Act)**

12     54.   Defendant is an employer within the meaning of FEHA and the

13  PDLL.

14     55.   Plaintiff was an employee of defendant.

15     56.   Plaintiff requested and took leave of absence for a disability

16  related to pregnancy.

17     57.   Defendant knew of plaintiff's pregnancy disability leave.

18     58.   Defendant threatened plaintiff with termination. It placed

19  plaintiff on an unwarranted and discriminatory performance improvement

20  plan and extended the plan, and defendant gave plaintiff an unwarranted

21  and discriminatory performance evaluation. These and other actions

22  described above were designed to force, and did force, plaintiff to resign.

23     59.   Plaintiff's need for, and exercise of her right to take, pregnancy

24  disability leave was the substantial motivating reason in defendant's

25  adverse actions toward plaintiff.

26     60.   Defendant's conduct was a substantial factor in causing

27  Plaintiff's harm.

28

-12-

COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### (Retaliation in Violation of FEHA/PDL)

61. Defendant is an employer within the meaning of FEHA and the PDLL.

62. Plaintiff was an employee of defendant.

63. Plaintiff opposed discriminatory activity that she reasonably believed to be unlawful under FEHA and the PDLL.

64. Defendant threatened plaintiff with termination. It placed plaintiff on an unwarranted and discriminatory performance improvement plan and extended the plan, and defendant gave plaintiff an unwarranted and discriminatory performance evaluation. These and other actions described above were designed to force, and did force, plaintiff to resign.

65. Plaintiff's opposition to activity she reasonably believed to be discriminatory was the motivating reason for defendant's adverse actions toward plaintiff.

66. Plaintiff was harmed.

## SEVENTH CAUSE OF ACTION

### (Constructive Termination in Violation of Public Policy)

67. Plaintiff was employed by Defendants.

68. Plaintiff was subjected to working conditions that violated public policy, in that plaintiff was retaliated against for taking protected leave of absence and for complaining about discrimination and retaliation in violation of public policy embodied in FEHA, FMLA, CFRA and PDLL.

69. Defendant intentionally created or knowingly permitted these working conditions.

70. These working conditions were so intolerable that a reasonable person in plaintiff's position would have had no reasonable alternative except to resign.

-13-

71.   Plaintiff resigned because of these working conditions.

72.   The working conditions were a substantial factor in causing plaintiff's harm.

73.   Plaintiff was harmed.

### EIGHTH CAUSE OF ACTION

### (Nonpayment of Wages – Cal Labor Code §§201, 202, 218)

74.   Plaintiff performed work for defendant.

75.   Defendant owes plaintiff wages under the terms of employment.

76.   The amount of unpaid wages is approximately $20,000.

### NINTH CAUSE OF ACTION

### (Failure to Prevent Discrimination and Retaliation)

77.   Plaintiff was an employee of defendant.

78.   Plaintiff was subject to discrimination and retaliation because she opposed defendant's unlawful practices and because she exercised her right to take a protected leave of absence.

79.   Defendant failed to take reasonable steps necessary to prevent the discrimination and retaliation.

80.   Plaintiff was harmed.

81.   Defendant's failure to take reasonable steps to prevent the discrimination and retaliation was a substantial factor in causing plaintiff's harm.

### III. PRAYER FOR RELIEF

WHEREFORE, plaintiff seeks relief as follows:

For the First, Second, Fifth, Sixth & Ninth Causes of Action:

Economic damages;

Noneconomic damages for pain and suffering and emotional distress;

Equitable and injunctive relief regarding defendant's unlawful policy;

Statutory attorney's fees;

-14-

1  Legal interest;

2  Costs of suit; and

3  Such other relief as the court deems just.

4  For the Third and Fourth Causes of Action:

5  Economic damages;

6  Legal interest;

7  · Liquidated damages in an amount equal to the sum of the economic

8  damages and legal interest;

9  Equitable and injunctive relief regarding defendant's unlawful policy;

10  Statutory attorney's fees;

11  Expert witness fees;

12  Costs of suit; and

13  Such other relief as the court deems just.

14  For the Seventh Cause of Action:

15  Economic damages;

16  Non-economic damages for pain, suffering and emotional distress;

17  Exemplary damages;

18  Legal interest;

19  Costs of suit; and

20  Such other relief as the court deems just.

21  For the Eighth Cause of Action:

22  Unpaid wages;

23  Legal interest;

24  Statutory penalties;

25  Statutory attorney's fees;

26  Costs of suit; and

27  Such other relief as the court deems just.

28

-15-

COMPLAINT FOR DAMAGES

1   **DATED:** June 13, 2013

2

3                      By: _____

4                            AARON P. MINNIS, ESQ.

5                            Attorney for Plaintiff

6                            JANELLE CRONK

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

COMPLAINT FOR DAMAGES

# EXHIBIT B

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RECKITT BENCKISER PHARMACEUTICALS, INC.; & DOES 1
THROUGH 10, INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANELLE CRONK

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED
FILED
ALAMEDA COUNTY**

JUN 1 4 2013

CLERK OF THE SUPERIOR COURT
By Barbara LaMotte Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of Alameda<br>1225 Fallon Street, Oakland, California 94612 | **CASE NUMBER:**<br>*(Número del Caso):*<br>RG13683734 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Aaron P. Minnis, Esq., Minnis & Smallets LLP, 315 Noe St., San Francisco, CA, 94114 p: (415) 551-0885

| DATE:<br>*(Fecha)* | JUN 1 4 2013 | Leah T. Wilson | Clerk, by<br>*(Secretario)* | Barbara LaMotte | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Reckitt Benckiser Phamaceuticals, Inc

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Aaron P. Minnis, Esq. (202935)<br>MINNIS & SMALLETS LLP<br>315 Noe Street<br>San Francisco, California 94114<br>TELEPHONE NO.: (415) 551-0883    FAX NO.: (415) 683-7157<br>ATTORNEY FOR (Name): Janelle Cronk | **ENDORSED**<br>**FILED**<br>ALAMEDA COUNTY<br><br>JUN 1 4 2013<br><br>CLERK OF THE SUPERIOR COURT<br>By Barbara LaMott Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Cronk v. Reckitt Benckiser Pharmaceuticals, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount     (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **RG13683734**<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 9
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

BY FAX

Date: 6/13/2013
Aaron P. Minnis
_____
(TYPE OR PRINT NAME)       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

# EXHIBIT C

Minnis & Smallets LLP
Attn: Minnis, Aaron P.
315 Noe Street
San Francisco, CA 94114_____

RECEIVED
JUN 2 5 2013
BY:_____

## Superior Court of California, County of Alameda

Cronk

              Plaintiff/Petitioner(s)

             VS.

Reckett Benckiser Pharmaceuticals, Inc.

             Defendant/Respondent(s)
             (Abbreviated Title)

No. RG13683734

**NOTICE OF CASE MANAGEMENT
CONFERENCE AND ORDER**
Unlimited Jurisdiction

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.
    Notice is given that a Case Management Conference has been scheduled as follows:

| Date: 10/29/2013<br>Time: 03:00 PM | Department: 22<br>Location: Administration Building<br>    Fourth Floor<br>    1221 Oak Street, Oakland CA 94612<br><br>Internet: http://www.alameda.courts.ca.gov | Judge: Robert McGuiness<br>Clerk: Monica Martin<br>Clerk telephone: (510) 267-6938<br>E-mail:<br>Dept.22@alameda.courts.ca.gov<br>Fax: (510) 267-1574 |
|---|---|---|

### ORDERS

1. You must:
   - a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
   - b. Give notice of this conference to any party not included in this notice and file proof of service;
   - c. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 calendar days before the date set for the Case Management Conference;
   - d. File and serve a completed Case Management Statement (use of Judicial Council Form CM-110 is mandatory) at least 15 days before the Case Management Conference (CRC 3.725)*

2. If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3. You are further ordered to appear in person† (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4. The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
   - a. Referring to ADR and setting an ADR completion date
   - b. Dismissing or severing claims or parties
   - c. Setting a trial date.

    * Case Management Statements may be filed by E-delivery, by emailing them to the following address: EDelivery@alameda.courts.ca.gov. No fee is charged for this service. For further information, go to **Direct Calendar Departments at http://apps.alameda.courts.ca.gov/domainweb.**

    †Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 06/19/2013.

By

### Superior Court of California, County of Alameda



### Notice of Assignment of Judge for All Purposes

Case Number: RG13683734
Case Title:   Cronk VS Reckett Benckiser Pharmaceuticals, Inc.
Date of Filing: 06/14/2013

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| Judge: | Robert McGuiness |
| Department: | 22 |
| Address: | Administration Building |
| | 1221 Oak Street |
| | Oakland CA 94612 |
| Phone Number: | (510) 267-6938 |
| Fax Number: | (510) 267-1574 |
| Email Address: | Dept.22@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law. (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings must be filed at the court facility where that department is located. The René C. Davidson Courthouse is the filing location for departments situated in the Alameda County Administration Building and the United States Post Office (see Local Rule, rule 1.9(d) effective as of 01/01/2013). All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Robert McGuiness
DEPARTMENT 22

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

(1) Counsel are expected to be familiar with the Statement of Professionalism and Civility, Alameda County Bar Association (www.acbanet.org). (2) Appearances by attorneys who are not counsel of record are not permitted except for good cause shown. Non-emergency scheduling conflicts is not good cause. (3) The court appreciates receiving courtesy copies of motions for summary judgment or adjudication, but otherwise, unless directed, counsel should refrain from lodging or emailing courtesy copies. (4) All references to "counsel" in this order apply equally to self-represented parties, who should know that there is a Self-Help Center at Rene C. Davidson Courthouse, 2nd Floor, 1225 Fallon Street, Oakland. (5) Email requests for motion dates preferred. Remember: Email is NOT a substitute for filing of pleadings/documents. (6) The court does provide an expedited informal discovery resolution procedure which MUST be followed before filing a discovery motion. Contact the clerk for details.

## Schedule for Department 22

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Contacts with Dept. 22 should be by e-mail with copies to all counsel after conferring about proposed dates.

- Trials generally are held: Mondays through Thursdays, 8:30 a.m. to 1:30 p.m. with two breaks and Fridays, 8:30 a.m. to noon with one break. A pretrial conference is generally scheduled 3 weeks before trial at 8:30 a.m. or 2:00 p.m. on a Friday. Personal appearance required.

- Case Management Conferences are held: Mondays through Thursdays at 3:00 p.m.

- Law and Motion matters are heard: Tuesdays and Thursdays at 3:00 p.m. (maximum 5 each). Email Dept. 22 to obtain a reservation. Limited hearings are

available for summary judgments, preliminary injunctions and other time intensive motions.

- Settlement Conferences are heard: Court resources are limited. Counsel encouraged to consider alternative dispute resolution options. Conferences will be specially set when deemed appropriate.

- Ex Parte matters are heard: Applications are considered only on moving papers and any written response. Email Dept. 22 to advise when papers will be filed and give notice to other side and advise same that written opposition must be filed in 24 hours.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
    Email:          Dept.22@alameda.courts.ca.gov

- Ex Parte Matters
    Email:          Dept.22@lameda.courts.ca.gov

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 22
- Phone: 1-866-223-2244

Dated: 06/18/2013

Facsimile

Presiding Judge,
Superior Court of California, County of Alameda

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 06/19/2013

By

_____

Deputy Clerk

Deputy Clerk

## CERTIFICATE OF SERVICE

1

2    I, SEAN MCHENRY, hereby declare:

3    I am a citizen of the United States, over the age of eighteen years and not a party to

4    the instant action. My office address is 315 Noe Street, San Francisco, California 94114.

5    On June 24, 2013, I caused to be served the following documents:

6        -    NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER; NOTICE OF
              ASSIGNMENT OF JUDGE FOR ALL PURPOSES
7

8    I enclosed a true copy of said documents in an envelope(s) addressed as follows:

9    Vincent N. Avallone, Esq.
     K&L Gates
10   One Newark Center, Tenth Floor
     Newark, New Jersey 07102-5285

11   Linda L. Usoz, Esq.
     K&L Gates
12   630 Hansen Way
     Palo Alto, California  94304
13

14   XX   **BY MAIL** depositing true and correct copies in sealed envelope(s) in the United
          States Mail in accordance with ordinary business practices during ordinary business
15        hours.

16   **BY PERSONAL SERVICE** in accordance with ordinary business practices during
     ordinary business hours.

17
     **BY FAX** at the number(s) listed above.
18
     **BY FEDERAL EXPRESS** overnight delivery.
19
     **BY E-MAIL**
20
     I declare under penalty of perjury under the State of California and the laws of the
21
     United States of America that the foregoing is true and correct.  Executed on June 24, 2013,
22
     at San Francisco, California.
23

24

25                                            _____
                                                    SEAN MCHENRY
26

27

28