United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAVELLE CRONK,

           Plaintiff,

   v.

RECKITT BENCKISER
PHARMACEUTICALS, INC.,

           Defendant.

_____/

No. C 13-3245 MMC

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

Before the Court is defendant's motion, filed July 17, 2013, to dismiss plaintiff's

Seventh and Eighth Causes of Action as well as any other cause of action to the extent it

relies on a theory of constructive discharge.  Plaintiff has filed opposition, to which

defendant has replied.  Having read and considered the papers filed in support of and in

opposition to the motion, the Court hereby rules as follows.[1]

**BACKGROUND**[2]

In August 2006, plaintiff was hired to work at Reckitt Benckiser Pharmaceutical's,

Inc. ("Reckitt") as a pharmaceutical sales representative responsible for marketing the drug

_____

[1] By order filed August 21, 2013, the Court deemed the matter suitable for decision
on the parties' written submissions and vacated the hearing set for August 23, 2013.

[2] The following facts are as alleged in the complaint and assumed true for purposes
of the instant motion.

1   Suboxone.  (See Compl. ¶¶ 5-6.)  In 2008 and 2009, plaintiff received performance

2   evaluation ratings of "strong or very strong" and in 2010 received a rating of "strong."  (See

3   Compl. ¶¶ 8-9.)  In 2011, plaintiff became pregnant and, on September 27, 2011, began a

4   leave of absence due to health issues related to her pregnancy.  (See Compl. ¶¶ 10-12.)

5   On May 21, 2012, after the birth of her daughter, plaintiff returned to work.  (See Compl.

6   ¶ 13.)  While on leave, plaintiff received a negative performance evaluation ranking of

7   "adequate" for the year 2011.  (See Compl. ¶¶ 22.)  Plaintiff alleges such evaluation was

8   based on data taken while she was "on a protected leave of absence" and also based on

9   inaccurate data known to be false to Reckitt.  (See Compl. ¶¶ 22, 24.)

10          Shortly after returning to work, plaintiff was placed on a Performance Improvement

11  Plan ("PIP"), which plan required plaintiff to increase her sales of Suboxone by "nearly 20%

12  . . . in three months"; the plan stated "[f]ailure to make immediate and sustained

13  improvements in performance as outlined above may result in further disciplinary action up

14  to and including termination.  (See Compl. ¶¶ 13-15.)  Plaintiff disagreed with the PIP,

15  questioned its validity, and informed her supervisor she did not agree with it.  (See Compl.

16  ¶¶ 16-17.)  Plaintiff informed defendant she believed she was placed on a PIP to "punish

17  [her] for taking pregnancy leave" (see Compl. ¶ 20) and that she believed the PIP was

18  "retaliatory and discriminatory" (see Compl. ¶ 25).  Plaintiff's manager stated, "Well, I

19  haven't terminated you, yet."  (See Compl. ¶ 17.)  He also "questioned whether she was

20  committed to her territory."  (See Compl. ¶ 19.)

21          On September 14, 2012, plaintiff received a second PIP, which lowered the

22  percentage by which she was required to increase her sales, for the reason that her initial

23  PIP target had been set too high, and extended, by three months, the deadline for her to

24  reach the revised target.  (See Compl. ¶ 21.)  When plaintiff requested time to consider

25  whether she would accept the extension, her manager "immediately asked if she wanted to

26  resign."  (See Compl. ¶ 21.)  On September 16, 2013, plaintiff "notified HR that she was

27  forced to resign," noting the "unjust and unfair situation ha[d] had a significant impact on

28

2

1   [her] health and wellbeing and . . . a devastating impact on [her] life and livelihood," and

2   explaining that "[g]iven the company ha[d] made clear they [would] not remove the

3   underserved PIP [she] [saw] no possible way that [she] [could] move forward and succeed."

4   (See Compl. ¶ 27.)

5                                    **LEGAL STANDARD**

6           Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

7   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

8   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

9   1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

10  showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

11  544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

12  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

13  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

14  requires more than labels and conclusions, and a formulaic recitation of the elements of a

15  cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

16          In analyzing a motion to dismiss, a district court must accept as true all material

17  allegations in the complaint, and construe them in the light most favorable to the

18  nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

19  "To survive a motion to dismiss, a complaint must contain sufficient factual material,

20  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

21  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must

22  be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at

23  555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

24  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

25  //

26  //

27  //

28

                                              3

**DISCUSSION**

**A. Constructive Termination**

    **1. Seventh Cause of Action**

       In her Seventh Cause of Action, plaintiff alleges a state law claim for "Constructive Termination in Violation of Public Policy." "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1244 (1994). "Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will." See Id., 7 Cal. 4th at 1244-45. "The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." Id. at 1246. To state a claim for constructive discharge, a plaintiff must make sufficient factual allegations showing "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." See id. at 1251. "In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." Id. at 1247. "[A] poor performance rating or a demotion, even when accompanied by reduction in pay, does not by itself trigger a constructive discharge." Id.

       Here, plaintiff alleges she received a negative performance review, was placed on a PIP that Reckitt acknowledged was unrealistic, was placed on a second PIP, which extended her improvement deadline and lowered her improvement target, had her commitment questioned, and was asked whether she wanted to quit. Such allegations do not rise to the requisite level of coercion, and, consequently, are insufficient to state a claim for constructive termination. See, e.g., Boyd v. AutoZone, Inc., No. 11-00776 JSW, 2012 WL 4466538 (N.D. Cal. Sept. 26, 2012) (granting summary judgment in favor of defendant on constructive discharge claim; finding no constructive discharge where plaintiff was

4

1   demoted and transferred); <u>Wu v. Pacificia Hotel Co.</u>, No. 00-2059 SI, 2001 WL 492475

2   (N.D. Cal. Apr. 25, 2001) (granting summary judgment in favor of defendant on constructive

3   discharge claim; finding no constructive discharge where plaintiff received written

4   reprimand and "drastically reduced" hours after rebuffing supervisor's sexual advances).

5       Accordingly, plaintiff's Seventh Cause of Action will be dismissed with leave to

6   amend.

7       **2. First Through Sixth Causes of Action**

8       In her First through Sixth Causes of Action, plaintiff alleges violations of state (<u>see</u>

9   First, Second, Fifth, and Sixth Causes of Action) and federal (<u>see</u> Third and Fourth Causes

10  of Action) statutes.  To the extent such claims are based on a theory of constructive

11  discharge, defendant likewise moves to dismiss.  The federal standard for pleading

12  constructive discharge is essentially the same as the California standard discussed above.

13  <u>See</u>, <u>e.g.</u>, <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1184 (holding constructive discharge exists

14  where "working conditions become so intolerable that a reasonable person in the

15  employee's position would have felt compelled to resign") (internal quotation and citation

16  omitted); <u>see</u> <u>also</u> <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 922, 930 (9th Cir. 2000)

17  (granting summary judgment in favor of defendant on constructive discharge claim; finding

18  no constructive discharge where employer reprimanded plaintiff for conduct overlooked in

19  other employees, "gave her an unwarranted negative performance evaluation," delayed in

20  approving plaintiff's sick leave, and gave less senior employees plaintiff's preferred work

21  shifts and vacation days).  For the reasons discussed above, plaintiff has failed to allege

22  facts sufficient to support a claim of constructive discharge under either state or federal

23  law.

24      Accordingly, to the extent plaintiff's First through Sixth Causes of Action are based

25  on a theory of constructive discharge, said causes of action likewise will be dismissed with

26  leave to amend.

27

28

**B. Eighth Cause of Action**

in her Eighth Cause of Action, plaintiff asserts a claim for "Nonpayment of Wages." In support thereof, plaintiff alleges that she "performed work for defendant," that "defendant owes plaintiff wages under the terms of employment," and that the "amount of unpaid wages is approximately $20,000." (See Compl. ¶¶ 74-76.)  Defendant moves to dismiss said cause of action on the ground that plaintiff's "allegations with respect to this claim are brief and conclusory." (See Mot. at 10:4).  The Court agrees.  Plaintiff has not alleged the relevant terms of her employment contract or any facts showing the basis for her claim that she is owed money.  See Twombly, 550 U.S. at 555 (holding "[f]actual allegations must be enough to raise a right to relief above the speculative level").  In her opposition, plaintiff asserts such claims are related to bonuses.  Any such allegation, however, must be alleged in her complaint.

Accordingly, plaintiff's Eighth Cause of Action will be dismissed with leave to amend.

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is hereby GRANTED, and plaintiff's Seventh and Seventh and Eighth Causes of Action, as well as plaintiff's First through Sixth Causes of Action to the extent such claims are based on a theory of constructive discharge, are hereby DISMISSED with leave to amend.

Plaintiff's amended complaint, if any, shall be filed no later than September 13, 2013.

**IT IS SO ORDERED.**

Dated:  August 26, 2013

MAXINE M. CHESNEY
United States District Judge

6